IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| RENEE L. PUGSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-CV-04042-DGK-SSA |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This case arises from the Commissioner of Social Security's ("the Commissioner") denial of Plaintiff Renee Pugsley's application for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of fibromyalgia, degenerative disk disease, anxiety, depression, and post-traumatic stress disorder ("PTSD"), but she retained the residual functional capacity ("RFC") to perform light work with a variety of restrictions, including working as a cleaner, mail clerk, and routing clerk.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff initially filed an application for disability insurance benefits on June 28, 2017, alleging a disability onset date of August 5, 2014. The Commissioner denied the application at

the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing and on February 21, 2019, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on January 13, 2020, leaving the ALJ's decision as the Commissioner's final decision. Judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S.Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close."). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination

medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues the ALJ erred at Step Four by failing to support the RFC with substantial evidence. Plaintiff contends the ALJ erred in finding she could perform light work because the medical evidence shows she lacks the ability to stand and walk during most of the workday as well as lift up to twenty pounds because of her degenerative disk disease. She also argues the ALJ failed to consider treatment notes suggesting her physical impairments had a psychogenic overlay.

With respect to the first argument, the Court notes the burden of persuasion is on the claimant to demonstrate her RFC. *See Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016); *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). Here, Plaintiff has not carried her burden. The evidence suggests she can stand and walk for most of the workday, albeit with restrictions, and lift up to twenty pounds.

For starters, the ALJ's decision is supported by the opinion of the State agency medical consultant, Dr. Joann Mace, M.D. Dr. Mace reviewed Plaintiff's medical records and reported activities and concluded she could perform light work and even occasionally perform postural activities. R. at 85-88.

Dr. Mace's conclusion is consistent with Plaintiff's daily activities, which were more extensive than one would expect for someone with disabling limitations. Plaintiff reported she had no problems with personal care activities such as dressing and bathing, and a typical day for her included performing household chores such as cleaning, washing dishes, doing laundry,

---

of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

sweeping, dusting, and preparing meals. R. at 16, 230-31, 244-46. Plaintiff also shopped weekly and drove short distances. R. at 232. She also performed stretching exercises and walked. R. at 16, 230, 234, 244, 248.

The record also shows Plaintiff's back condition was amenable to treatment. As the ALJ noted, Plaintiff successfully underwent lumbar spinal fusion surgery in June of 2016. R. at 17, 340-41. Within one month of the surgery, she reportedly was "very content" with the results, since her symptoms were "gradually resolving." R. at 349. By October 2016, Plaintiff was "doing well." R. at 352. Although in December 2016 she reported numbness and tingling in her left knee, this is attributable to the fact that she had recently increased her activity by extensively cleaning her home and moving to a new one. R. at 329. The ALJ rightly noted that her doctor described her back surgery as a "good" outcome, and on examination, she had normal gait, strength, sensation, reflexes, and range of motion. R. at 17, 330. She had no tenderness in the lumbar spine, and straight leg raise testing was negative. R. at 330.

Her symptoms continued to abate in the following year. In June 2017, Plaintiff reported "significant improvement" in her symptoms, which worsened with "active" exercise or "prolonged" standing or walking in her yard while gardening. R. at 17, 332. She described her pain as "mild" (only a 1 on a 10-point scale), and her doctor said her examination was "very benign." R. at 333-34. In fact, the doctor encouraged her to exercise and recommended strength training. R. at 334. Subsequent physical examinations revealed only some spinal tenderness in the neck. R. at 17, 583, 591-92. Since her back condition was "amenable to treatment," it cannot be considered disabling. *See Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009).

Granted, Plaintiff has other impairments which could contribute to an inability to walk or stand for an entire workday, but the medical evidence does not support Plaintiff's claims

4

concerning the limiting effects of these impairments. Examinations into her fibromyalgia showed moderate findings such as reduced range of motion in the knees and tenderness in the thoracic spine and cervical spine. R. at 365, 374, 380, 407, 411. Magnetic resonance imaging ("MRI") showed only "mild" degenerative changes with small bulging disks in the cervical spine. R. at 442, 352. Similarly, a thoracic spine MRI was normal, and an x-ray showed mild scoliosis. R. at 439, 451. A left knee MRI was "unremarkable," and a left knee x-ray was negative for osseous injury. R. at 437-38. Further, Plaintiff's neck and musculoskeletal examinations were frequently normal. R. at 380, 383, 387, 390, 392, 398, 401, 404, 407, 414.

Finally, the ALJ noted Plaintiff's work history, which contained several years of low earnings and "gaps in employment" with long periods of no earnings. R. at 16, 182. The ALJ reasonably found that this evidence was generally inconsistent with her allegation that she would be working but for her impairments. R. at 16. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (noting that "a lack of work history may indicate a lack of motivation to work rather than a lack of ability").

Consequently, the Court cannot say the ALJ erred in finding she could perform light work with numerous restrictions.

Plaintiff's other argument—that the ALJ erred by failing to consider treatment notes suggesting her physical impairments had a psychogenic overlay—is also unavailing. The record demonstrates the ALJ considered the combination of Plaintiff's mental and physical impairments in crafting the RFC. The ALJ noted that "it is reasonable to believe that the claimant had some limitations due to her mental symptoms combined with symptoms associated with fibromyalgia, including fatigue and difficulty concentrating." R. at 14. However, based on Plaintiff's activities, mental status examinations, and course of treatment, the ALJ concluded that she could perform

5

simple, routine tasks with no fast-paced production requirements and occasional social interaction R. at 15.  Thus, there is no error.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  September 30, 2021                              /s/ Greg Kays
                                                                                 GREG KAYS, JUDGE
                                                                                 UNITED STATES DISTRICT COURT